15446

*IN RE:* LEWIS *ET AL.*
FANT, STATE BANK EXAMINER, v. BANK OF MANNING
*ET AL.*

(21 S. E. (2d), 205)

44

*Messrs. Davis & McFaddin,* of Manning and *Mr. Car-
lisle Roberts,* of Columbia, Counsel for Petitioners, ▮

*Mr. Wendell M. Levi* and *Mr. Shepard K. Nash,* both of
Sumter, Counsel for Respondent, ▮

Counsel for Appellants, in a Reply Brief,

July 16, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE:

When the Bank of Manning became insolvent, in December, 1926, it was indebted to the Murchison National Bank, of Wilmington, North Carolina, in the sum of approximately $65,000.00. The notes evidencing this indebtedness were secured by a pledge of collateral securities, including bills receivable, assigned to the Murchison National Bank under a written agreement which provided, among other things: " * * * that upon the non-payment of this obligation said Bank or the holder thereof, may sell the same at public or private sale, for cash or on credit, as a whole or in parcels, at any place in the city of Wilmington, without notice, and said Bank, or holder, may at any such sale purchase the same or any part thereof, for its or his own account, and after deducting all costs of sale the balance of the proceeds shall be applied to this obligation, * * * ."

The face value of the securities held by the Murchison National Bank by way of collateral was about $127,000.00.

Following the appointment of Receivers for the Bank of Manning, which was made by decree of the Circuit Court on December 30, 1926, the Murchison National Bank, after ten days' public advertisement, and in strict compliance with the pledge agreement and notice of sale, offered for sale all of the collateral security held by it, on the second day of February, 1927, at the Court house door in the City of

Wilmington, North Carolina, at public auction to the highest bidder for cash. When the securities were offered for sale separately there were no bidders; when they were offered for sale as a whole the Murchison National Bank bought them in for the sum of $1,000.00, being at that price the highest bidder therefor.

Thereafter a claim was filed by the Murchison National Bank with John G. Dinkins, the surviving Receiver of the Bank of Manning, amounting to $52,074.52. This sum represented the amount remaining due to the Murchison National Bank by the Bank of Manning after applying collections made during the period between the insolvency of the Manning bank and the sale of the collateral notes, and the sum of $1,000.00 paid by the Murchison National Bank to itself as the purchase price of the collateral.

The Murchison National Bank collected various amounts on the collateral securities bought by it, which reduced the original indebtedness due it by the Manning bank to the sum of $12,103.89.

It appears that the Receivers of the Bank of Manning, after long and diligent efforts, have liquidated the remaining assets of the bank, and have procured an order from the Court directing the payment of a final liquidating dividend in termination of the receivership.

The issue arose before the lower Court as to whether or not the petitioners, Ralph L. Lewis and Huger S. King, successors in interest to the Murchison National Bank, and owners and holders of the claim filed by it against the Bank of Manning, are entitled to a dividend based upon the sum of $52,074.52 or upon the sum of $12,103.89. Upon an agreed statement of facts and certain exhibits, the matter was submitted to the Circuit Court for determination, and that Court adjudged that the petitioners, Lewis and King, were entitled to receive dividends on the sum of $12,103.89 only.

The validity of a pledge agreement such as the one before us has uniformly been upheld by the Courts of the country. Such pledge agreements are commonplace in modern business relationships. Section 8715, 1932 Code; *Parrish v. W. R. Barringer Company*, 175 S. C., 452, 179 S. E., 485; *Fretwell v. Carter*, 78 S. C., 531, 59 S. E., 639; *Hayward v. Eliot National Bank*, 96 U. S., 611, 24 L. Ed., 855; *Hiscock v. Varick Bank*, 206 U. S., 28, 27 S. Ct., 681, 51 L. Ed., 945; *Peacock v. Phillips*, 247 Ill., 467, 93 N. E., 415, 32 L. R. A. (N. S.), 42; *Farmers' National Bank v. Venner*, 192 Mass., 531, 78 N. E., 540, 7 Ann. Cas., 690; *Baker v. Drake*, 66 N. Y., 518, 23 Am. Rep., 80; *Penn Mutual Life Insurance Company v. Bancroft*, 207 Ala., 617, 93 So., 566, 28 A. L. R., 1102. And see annotation in 109 A. L. R., 1106.

The pledge contract constitutes a relation of trust between the creditor and the debtor. The rights of a pledgor and a pledgee are well stated in the case of *Montague v. Dawes*, 14 Allen, Mass., 369, as follows: "One who undertakes to execute a power of sale is bound to the observance of good faith, and a suitable regard for the interests of his principal. He cannot shelter himself under a bare literal compliance with the conditions imposed by the terms of the power. He must use a reasonable degree of effort and diligence to secure and protect the interests of the party who intrusts him with the power. * * * When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal. If he fails in either, he ought not to be permitted thereby to acquire any irrevocable rights which he can set up against the party whose interests he has sacrificed."

The validity of the pledge agreement in this case is not challenged, but the sale held thereunder is assailed from several angles.

The lower Court found that the amount of the bid, $1,-000.00, was grossly inadequate, because thereafter the Murchison National Bank realized from the securities about forty times the amount of the bid. But the Court made no specific finding that the sale was invalid upon this ground. The Court did hold, however, that the sale of the securities constituted nothing more than a mere bookkeeping transaction on the part of the Murchison National Bank, and this conclusion was evidently reached because of the circumstances later adverted to showing an express waiver by the Murchison Bank of any rights acquired by reason of the sale. We do not think, therefore, that it is necessary in this case to determine whether the sum of $1,000.00 paid by the Murchison National Bank was so grossly inadequate as to presume fraud, or to show a lack of proper diligence. The decision of the case turns upon the question of waiver, which is fully argued in the briefs of counsel.

It appears that on February 28, 1929, two years after the sale and purchase of the collateral securities by the Murchison National Bank, it wrote the following letter to the Receivers of the Bank of Manning:

"In accordance with your request of February 26, we are enclosing a statement which shows the status of the collateral account of the Bank of Manning as of March 1, namely, the original amount of the collateral payments made and balance due on each note.

"You will also note from the statement that with collections to date the indebtedness of the Bank of Manning has been retired with the exception of the $15,000 note and interest since December 10, 1926, for application on which we have on hand $2,983.23 which leaves due $12,016.77."

From a consideration of this letter, the lower Court held that it was clearly the intention of the Murchison National Bank to give the Receivers of the Bank of Manning the benefit of all collections made by it on the collateral security following the sale.

In our opinion, the question of whether or not the Murchison National Bank waived any rights it might have obtained from the public sale of the collateral security is not debatable. The sale was clearly disregarded, and all rights thereunder expressly waived. It was subsequent to the date of the above-mentioned letter that the petitioners, Lewis and King, became the holders of the claim filed by the Murchison National Bank with the Receiver, and of course their rights, as held by the lower Court, are measured by the rights of the Murchison National Bank.

The appellant contends that the alleged waiver is not effective because it lacks consideration. We are unable to agree with this proposition.

The letter from the Murchison National Bank to the Receivers of the Bank of Manning embodies an express waiver. No consideration in a pecuniary sense nor any element of estoppel is required. The rights surrendered by the pledgee and the benefit conferred upon the pledgor constitute all the consideration which is necessary. *Stubbs v. Philadelphia Life Insurance Company,* 151 S. C., 326, 149 S. E., 2, 83 A. L. R., 830.

The lower Court held that a secured creditor desiring to participate in the insolvent estate fund is required first to exhaust his security and credit the proceeds on his claim, or to credit its value upon his claim and prove the balance, it being optional with him to surrender his security and prove for his full claim. This rule is in accordance with what is known as the bankruptcy rule. We are in accord with this holding. It was adopted in this State beginning with the case of *Wheat v. Dingle,* 32 S. C., 473, 11 S. E., 394, 8 L. R. A., 375. For a full discussion of it see annotation in 94 A. L. R., 468.

We are in agreement with the Circuit Court in its holding that the petitioners are entitled to receive dividends only on the sum of $12,103.89.

50

Judgment affirmed.

Mr. Chief Justice Bonham and Circuit Judges Philip H. Stoll and E. H. Henderson, Acting Associate Justices, concur.

Mr. Associate Justice Stukes did not participate.